UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) Case No. 2:23-cv-00173 ) Judge Nancy Torresen |
| v. | ) ) |
| CHRISTOPHER A. SHELTON, *et al.*; | ) ) |
| Defendants. | ) |

**STIPULATIONS TO BE FILED AND EFFECTIVE
ON DISMISSAL OF BANKRUPTCY CASE**

This agreement is entered by and among the United States, Christopher A. and Joanna Shelton ("the Sheltons"), Maine Revenue Services, Real Time Resolutions, Inc. ("RTR"), and joint judgment lienholders William Swartzbaugh, Jeffrey Harder, and Quang Nguyen ("the Judgment Lienors") and will become effective and be filed as stipulations in the above-captioned action upon the dismissal of the Shelton's bankruptcy case. Deutsche Bank National Trust Company as Trustee for Soundview Home Loan Trust 2007-1 Asset Backed Certificates Series 2007-1 ("Deutsche Bank") is not a party hereto as its rights are not affected negatively; to the contrary, the Sheltons are bound below to cure the mortgage arrearage to Deutsche Bank promptly. The parties to this action other than the Sheltons are referred to below as "the lienholder parties" and include Deutsche Bank.

*Recitals*

Whereas, the United States commenced the above-captioned action on April 18, 2023, to (1) reduce to judgment unpaid federal tax liabilities owed by the Sheltons and (2) enforce related federal tax liens against certain real property belonging to Christopher A. Shelton located at 314 Cousins Street, Yarmouth, Maine (the "Property").

1

Whereas, the Court granted the United States' motion for judgment on the pleadings. *See* Order Affirming the Recommended Decision of the Magistrate Judge (ECF No. 91) and entered a judgment in favor of the United States which stated in part as follows:

   a. Judgment is entered against Defendants Christopher A. Shelton and Joanna Shelton for income taxes for tax years 2010 through 2021 in the amount of $562,815.88 as of January 16, 2023, less payments thereafter, plus statutory additions and interest accruing from January 16, 2023, pursuant to 26 U.S.C. §§ 6601, 6621, and 6622, and 28 U.S.C. § 1961(c);

   b. Plaintiff United States has valid and subsisting federal tax liens under 26 U.S.C. § 6321 and 6322 securing the liabilities on the real property at 314 Cousins Street, Yarmouth, Maine, which is more particularly described in the deed recorded in the Cumberland County Registry of Deeds at Book 22072, Pages 94-95.

   c. A Court-appointed receiver is to conduct a judicial sale of the entirety of the 314 Cousins Street property and the proceeds of the sale shall be distributed in accordance with the Order on Stipulation Regarding Priority Lienholder Parties entered March 8, 2024 (ECF No. 80).

ECF No. 92.

Whereas, the lienholder parties, stipulated and agreed to the priorities of their lien interests. The stipulation described how the proceeds from sale of the Property should be distributed should it be sold. The Court entered the stipulation as an order on March 8, 2024. *See* ECF No. 80.

Whereas, the United States moved for appointment of a receiver. Specifically, the United States requested in that motion that the Court enter an order appointing Betsey Ducas of Waypoint Brokers Collective, as receiver to arrange for the sale of the Property, consistent with the Court's judgment and adoption of the Magistrate's Report and Recommendation.

Whereas, on July 2, 2024, the Sheltons filed a Petition for Relief under Chapter 13, Title 11, United States Code, in the United States Bankruptcy Court for the District of Maine, Portland Division with case number 24-20136, staying this district court by operation of 11 U.S.C. § 362. Accordingly, the Court stayed the district court action, instructing the parties to refile any

motions pending at the time of the bankruptcy petition if and when that becomes appropriate. *See* ECF No. 98.

Whereas, in the bankruptcy case, the Sheltons proposed a plan under which they would sell the Property by June 30, 2025, and make certain plan payments and whereas some of the parties hereto thereafter negotiated the terms set forth below but determined that they are more efficiently implemented with significant expense savings by dismissing the bankruptcy case and using this district court action as the vehicle to carry them out. The other parties hereto agree.

*Terms*

Therefore, the undersigned parties agree to the following terms and provisions:

1. Christopher and Joanna Shelton will voluntarily dismiss their Chapter 13 bankruptcy action currently pending in the United States Bankruptcy Court for the District of Maine on or before September 11, 2024.

2. Christopher and Joanna Shelton agree to waive any challenge of the judgment the District Court entered against them on May 8, 2024. *See* ECF No. 92. This includes appealing the judgment or challenging the judgment in the District Court by, for example, refiling their motion under Rule 52(b) and Rule 59, *see* ECF No. 93.

**Payments Required**

3. By Monday, September 23, 2024, the Sheltons must pay the full arrearage owed on their primary mortgage and become fully current including making any payment due on or that date. The Sheltons must thereafter timely make all mortgage payments coming due after satisfying the arrearage. According to the schedules in the Sheltons' bankruptcy action, the arrearage as of the bankruptcy petition date was in the amount of $8,556.42. The Sheltons

must provide proof of satisfaction of this arrearage as well as all subsequently due monthly payments, through their counsel, by no later than October 1, 2024.

4. By September 15, 2024, the Sheltons must make their third quarter federal estimated tax payment for tax year 2024 By October 15, 2024, the Sheltons must be current on all federal and state estimated tax payments (*i.e.,* by having paid at least three-fourths of their 2023-year tax not covered by withholdings). They must thereafter make timely estimated quarterly tax payments. Federal estimated tax payments shall not be mailed to the Service Center and instead shall be mailed to Revenue Officer Susan Marston along with Form 1040-ES and the check shall state that the payments are "For 2024 Tax" or "For 2025 Tax" as applicable, or another means approved by the United States. State of Maine estimated tax payments shall be mailed to Office of the Maine Attorney General, Attn: Kaitlyn Husar, 6 State House Station, Augusta, Maine 04333 and the check shall state the payments are "For 2024 Tax" or "For 2025 Tax" as applicable.

5. Starting October 1, 2024, and on the first of each month thereafter until the Property is sold, the Sheltons agree to make monthly payments (through their attorney as set forth below) of the approximate interest amounts accruing on the liens of the other parties hereto as follows (these figures are binding regardless of their accuracy as the actual interest amounts accruing):

   a. $4,093.00 to the United States;
   b. $1,025 to RTR;[1]

---

[1] This payment is based on the $115,000 at 10.7% interest rate that has priority over the United States pursuant to the stipulation on priority between lienholder parties in the District Court action. *See* ECF No. 74. The Sheltons did not enter into that stipulation. Accordingly, the Sheltons may still challenge RTR's interest in the Property. However, if the Sheltons

      c.   $849 to Maine Revenue Service; and

      d.   $136 to the Judgment Lienors (escrowed as provided below).

These payments total $6,103. The above payments will be made to Jennifer Hayden of Molleur Law (payable to the firm) which will act as the escrow agent holding and distributing these funds. Ms. Hayden will be responsible for dividing the payments and paying the lienholders the amounts outlined above in this agreement, except that she shall retain in escrow the monthly Judgment Lienor payments and distribute them together at the earlier of a sale of the Property or a default. Ms. Hayden must receive these payments by the first of every month, starting October 1, 2024. The above-listed lienholders must receive the payments by the fifth of every month. The Sheltons must continue to make these monthly payments until the closing for the sale of the Property occurs even if the closing is scheduled for shortly after the next due date.

6. Mortgage payments to Deutsche Bank are due on the 1st of the month. The Sheltons must provide Ms. Hayden proof that they made each monthly payment within 3 days by showing her evidence of a debit to whatever bank account the funds are drawn from or against which as check is written.

7. Ms. Hayden must report any missed payment to her under paragraph 4 or any failure to receive timely proof of a timely mortgage payment to counsel for the United States by email immediately and at most within 48 hours.

8. The Sheltons must continue to pay all utility bills associated with the Property and must keep the Property in good condition. The United States reserves the right to ask for proof of

---

successfully challenge RTR's interest, RTR may keep the monthly payments it received up to the Court's decision in favor of the Sheltons.

payment of mortgage payments and/or utility bills which shall be provided within five dates and may ask to assess the condition of the Property, using one of its agents to inspect on five days notice.

### Sale of the Property

9. Provided that the Sheltons do not violate any provision in this agreement, the Sheltons may sell the Property subject to the additional conditions below.

10. The Sheltons shall engage a real estate agent to conduct the sale. The engagement of the real estate agent must be an arms-length transaction, where the Sheltons receive no personal benefit for engaging that particular real estate agent and the agent is not a friend or relative. The United States' preference is that Betsey Ducas of Waypoint Brokers Collective handle the sale. The Sheltons must disclose to the United States the real estate agent they chose to use, and United States must approve the selection of real estate agent after interviewing the agent, which approval shall not be unreasonably withheld. The chosen real estate agent must communicate transparently with the United States during the sale process by answering any questions about viewings or offers.

11. The Property must be listed by April 15, 2025, at a listing price determined in consultation with their real estate agent in good faith after the agent has inspected the interior of the Property, with the initial listing price subject to approval of the United States which approval shall not be unreasonably withheld.

12. The Property must be under sale contract by June 30, 2025, and any sale theretofore contracted must close within 30 days. Either deadline may be extended by the United States or over its objection for good cause provided that the Sheltons are complying with all other terms of these stipulations, but in no event may the contract deadline be extended beyond

July 31, 2025, unless all lienholder parties consent. The failure of a closing to occur under a contract for sale due to purchaser default shall not constitute good cause to extend the deadline unless another purchaser has made an acceptable offer and has signed a contract for sale.

13. The Sheltons must provide the identity of the potential buyer to the United States before entering into a contract of sale for the Property. The buyer must be an arms-length buyer unless the nature of any relationship is fully disclosed and approved by the United States and it agrees that the sale price is nevertheless appropriate in light of the real estate agent's view of whether the price reflects the offer reflects the best offer likely to be received.

14. Also before entering into a contract of sale for the Property, the United States must approve the final sale price. In no event shall the Property be sold for less than $900,000 unless approved by all lienholder parties.

15. The preceding two paragraphs' conditions shall not apply to a sale contract under which the proceeds will satisfy the liens of all lienholders but including only $115,000 for RTR (unless its lien has been held to be unenforceable or it has settled with the Sheltons for a lesser sum).

16. Any purchase and sale contract entered for the sale of the Property shall require the purchaser to deposit at least 3% of the purchase price as earnest money. Any forfeited earnest money deposit due to the purchaser's failure to comply with the terms of the contract shall be deposited into the registry of the district court and subject to disposition according to law.

17. All lienholder parties shall provide any purchaser's title insurer or attorney with acceptable assurances that their liens, to the extent satisfied, will be released at or shortly after the closing of any sale and the title insurer or attorney may demand that the funds to satisfy any

lienholder party's debt be escrowed until appropriate documentation has been provided, except that the United States Department of Justice may promise (in writing) the IRS will release satisfied federal tax liens or discharge the Property from any liens not fully satisfied within 30 days of receipt of the funds as it customarily does when there is a sale by a receiver or an agreed sale to settle tax collection litigation.

### Default

18. A default is a violation of any of the provisions of this agreement and can include but is not limited to the following:

    a. Failure to pay Deutsche Bank mortgage arrearage by September 21, 2024;

    b. Failure to make timely estimated quarterly federal income tax payments and to timely cure the current failure to have made all required estimated quarterly federal income tax payments;

    c. Failure to make timely estimated quarterly State of Maine income tax payments as provided in this agreement;

    d. Failure to make timely monthly interest payments to the Molleur Law firm;

    e. Failure to make timely payments on the Deutsche Bank mortgage;[2]

    f. Failure to timely pay utility bills;

    g. Failure to list the Property or have it be under contract for at least $900,000 by the dates specified above.

19. If a default occurs, no notice or declaration of default is required, and the United States may immediately move the District Court for appointment of a receiver on a shortened response time of only three business days. The motion will be similar to the motion the United States previously filed. *See* ECF No. 94. The Sheltons waive all rights to challenge the motion

---

[2] If a monthly payment is delayed at no fault of the Sheltons, as attested to by Ms. Hayden, that delay is not considered a default under this agreement.

except the defense that the default did not occur or was cured before the motion was filed. Curing the default after the filing of such a motion does not constitute a defense against the United States' motion for appointment of a receiver. The Sheltons shall then be required to vacate the Property within 30 days of the appointment of a receiver.

20. The Sheltons may not refile for bankruptcy for purposes of avoiding or stalling the appointment of a receiver or the receiver's sale of the Property. In the event they or either of them files a bankruptcy petition after a default under this agreement, regardless of the purpose, the Sheltons waive opposition to an emergency motion to lift the stay to permit the district court action to continue including the appointment of a receiver if not already appointed and the marketing and sale of the Property and further waive opposition to a motion to withdraw the reference so that the District Court may determine the motion to lift the stay.

## Miscellaneous

21. Upon the dismissal of the Sheltons' bankruptcy case, the United States may file this document along with a motion to hold the district court action in abeyance, subject to the enforcement of the terms of this agreement should that become necessary.

22. The Sheltons shall file a status report at the time the Property is listed for sale, indicating the listing price, and another report if the Property is under contract for sale.  The United States shall inform the Court if the Property has been sold and shall file a satisfaction of judgment if the judgment has been satisfied by the proceeds of a sale.

23. The Debtors shall pay Molleur Law the attorney's fees incurred during the bankruptcy, to the extent not covered by the bankruptcy retainer, in monthly installments of $1,500 until

fully paid and any balance shall be payable from the proceeds of the sale of the Property to the extent proceeds exceed those of the lienholders.

SO STIPULATED AND AGREED:

*For the United States of America,*

/s/ Lee Seitz
LEE E. SEITZ
Trial Attorney, Tax Division
United States Department of Justice
P.O. Box 55, Ben Franklin Station
Washington, D.C. 20044
(202) 307-6580 (v)
(202) 514-5328 (f)
Lee.Seitz@usdoj.gov


CHRISTOPHER SHELTON
Defendant


JOANNA SHELTON
Defendant


*For Counsel Debtors in* Christopher A. Shelton and Joanna P. Shelton, *24-bk-20136 (Bank. D. ME) and as Escrow Agent*

/s/ Jennifer Hayden
JENNIFER G. HAYDEN
Molleur Law
190 Main Street, 3rd Floor
Saco, ME 04072


For Maine Revenue Service,

/s/ Kaitlyn Husar
KAITLYN M. HUSAR
Asst. Attorney General
6 State House Station
August, Maine 04330
207-626-8846

*For* Real Time Resolutions, Inc.

*/s/ Joan Egdall*
Joan M. Egdall
Demerle & Associates P.C.
10 City Square
Boston, MA 02129
617-934-7431
jegdall@demerlepc.com


*For* Deutsche Bank National Trust Company as Trustee for Soundview Home Loan Trust 2007-1 Asset Backed Certificates Series 2007-1,

*/s/ Brett Messinger*
Brett L. Messinger
Duan Morris, LLP
2 Monument Square, Ste. 505
Portland, ME 04101-3406
blmessinger@duanemorris.com

*Judgment Lienor, pro se,*

*/s/ William Swartzbaugh*
William Swartzbaugh
3 Lyndon Way
Kittery, ME 03904


*Judgment Lienor, pro se,*

Jeffrey Harder
5 Oakland Road
Falmouth, ME 04105


*Judgment Lienor, pro se,*

*/s/ Quang Nguyen*
Quang Nguyen
4 Robyn Avenue
Westbrook, ME 04092